[No. 5887.]

IN THE MATTER OF THE APPLICATION OF GEORGE STIDGER FOR A WRIT OF HABEAS CORPUS.

**Habeas Corpus—Remedy by Writ of Error.**

Where a person adjudged guilty of contempt of court has an adequate remedy by writ of error to review the judgment complained of, an original proceeding by habeas corpus will not be entertained by the appellate court.—P. 421.

*Original Proceeding.*

Application by George Stidger for a writ of *habeas corpus.* Writ denied.

Decision *en banc.*                        *Dismissed.*

· Mr. JUSTICE GODDARD and Mr. JUSTICE BAILEY dissenting.

Mr. GEORGE S. REDD, Mr. GREELEY W. WHITFORD, Mr. JOHN H. CHILES and Mr. HARRY S. SILVERSTEIN, for petitioner.

Mr. N. C. MILLER, attorney general, and Mr. W. R. RAMSEY, assistant attorney general, for respondents.

Mr. JUSTICE GUNTER delivered the opinion of the court:

This is an original proceeding by *habeas corpus.* Relief is sought from imprisonment under a judgment for contempt by the district court.

Upon the filing here of the petition for the writ of *habeas corpus,* the writ was granted. Among the

respondents thereto were the judge of said court and the sheriff in whose custody, pursuant to said judgment, was the petitioner herein. The sheriff made return wherein he set out the warrant of commitment under which the petitioner was held and wherein he alleged that:

"Said warrant of commitment was issued in the manner and under the circumstances and for the purpose set forth in the petition of the said George Stidger herein."

Whether it was competent for the sheriff to make as a part of his return any other matter than a copy of the warrant of commitment, that is, whether he could conclude us by his admissions that the facts pertinent to the judgment in contempt were as alleged in the petition, we do not decide, but for the purpose of this ruling it will be conceded that he has made the facts set out in the petition a part of his return. The case is submitted on a demurrer, by the petitioner, to the return, and the question before us is, Should the petitioner be discharged in this proceeding if the facts be as set out in the return?

The facts so presented material to this ruling are these: Hon. F. T. Johnson was one of the five judges of said district court and at the times herein mentioned was sitting in the fourth division thereof; petitioner was the district attorney of the same court; September 23, 1905, a petition entitled, "In the matter of the enforcement of the laws in relation to gambling," was filed with said judge by the society for the suppression of gambling. The petition recited that the laws in relation to gambling were being violated in the city of Denver with the knowledge of the executive officers of the city and county of Denver, and designated five places where gambling was allowed to be carried on. The petition further recited that the several judges of the district courts

throughout the state had full power under § 1482, Mills' Ann. Stats., to require the enforcement of the law, and suggested that the judge take necessary steps to enforce the same. This petition was supported by two affidavits and was indorsed and filed in the fourth division of said court. Thereupon an order was entered signed "F. T. Johnson, judge of the second district," wherein it was recited, that whereas it appeared from the petition and affidavits that an open violation of the laws as to gambling existed, particularly at the five places mentioned, the sheriff was ordered to suppress these places. October 25, an order was entered by the same judge entitled, "In the matter of gambling," directed to the sheriff and other officers, stating that the judge had been further informed that the saloons were violating the closing and wine-room laws and ordering them to investigate and arrest any violators if they refused to obey the law after being notified. October 27, the sheriff arrested and brought into court five persons charged with keeping open saloons after midnight and with maintaining gambling establishments. These parties were placed under recognizance to appear before the district court January 16, 1906. January 2, 1906, respondent Johnson, as judge of said court, issued a warrant for the arrest of one Beem. This warrant was based upon an affidavit. Beem was also placed under recognizance to appear before said court January 16, 1906.

In these proceedings said Judge Johnson had been acting under said § 1482. This section gives to district judges, in their respective districts, power to have parties charged with violating the criminal laws, arrested and brought before them and to place them under bond returnable to the district court.

The following rules of said court are here pertinent:

Rule 8. "For the convenient transaction of business the court will be arranged in 5 divisions, to be designated division 1, division 2, division 3, division 4 and division 5, and all civil business of the court shall be distributed to 1, 2, 3, and 4."

Rule 9. "Division 5 is hereby designated the criminal division of this court, to which all criminal cases and criminal business shall be assigned. The presiding judge of this division shall hear and determine all petitions for writs of *habeas corpus,* and all other petitions and proceedings relating to criminal business, and shall have charge of and receive all reports of the grand jury at all times."

Judge Johnson requested petitioner, the district attorney, should he file informations in the above causes in said fifth division—the criminal division— to ask the judge presiding therein—Judge Palmer— to transfer the cases to the division of Judge Johnson—the fourth division. The district attorney made the request. Judge Palmer declined to make the order. Judge Johnson then asked the district attorney to file the informations in his division. This the district attorney declined to do, assigning as his reason the above rules of court. Later the district attorney filed informations in these cases before Judge Palmer, to which informations the defendants entered a plea of guilty and were fined. Later Judge Palmer remitted the fines.

January 20, division 4 of said court, Judge Johnson sitting therein, took up without previous notice the said matter of filing informations in the above cases in division 5 and the disposition of such cases there made. Petitioner was present at the time, as were counsel for defendants in the above causes.

Judge Johnson first investigated as to whether the sentences in Judge Palmer's division could be interposed in bar to informations that might be filed

upon the same offenses pending in his department.
He then, without previous notice, entered into an investigation of whether the petitioner, the district attorney, was guilty of contempt in filing informations in department 5 upon charges which he, the judge, considered as pending before him in division 4. For this purpose he examined several witnesses. After this examination had progressed for a time the following occurred:

Mr. Stidger: "I desire to ask, if your honor pleases, if upon the questioning of these witnesses the court intends it as an investigation of the district attorney or to base any action upon it against the district attorney's office, I desire to protest as being unwarranted; that I have had no notice of it and that I desire to state that if this is for this purpose I believe a deliberate advantage has been taken of me by not giving me notice of the proceedings."

The Court: "How long a time do you want?"

Mr. Stidger: "I don't know what the court is investigating, whether the court is investigating my proceedings or my special conduct in the case."

The court then, *inter alia,* said: "This court is of the opinion that it is the judge of its own jurisdiction and the district attorney has no right to judge the jurisdiction of this court; that it is his duty to aid this court in its work rather than obstruct it, and up to this time I find the district attorney's conduct has been the greatest obstruction that I have met with in attempting to arrest and punish these men who are violating the law under the conditions as they exist in this city, and to maintain my authority and my dignity as a judge, I think I shall confine the district attorney for contempt and upon the ground that he is obstructing the due administration of justice in this division of the court, that he is so conducting these matters, unknown to this court, and in a manner

that tends to bring ridicule and contempt on the workings of this court in the minds of the public; to absolutely belittle it and interfere with the duties of the court and contending that the court has no jurisdiction, which is a question of law and the district attorney knows that it is a question of law. I will fine the district attorney $500.00 and will commit him to the county jail until it is paid and a proper order will be drawn upon this sentence and the district attorney can have such reasonable time as he desires to *take exceptions and appeals.*"

Mr. Stidger: "I do not understand that this was a proceeding in contempt. I have been trying to arrive at what this examination was for, and I asked the court for an explanation of it. Do I understand the court to say that these proceedings are contempt proceedings against me?"

The Court: "They are now."

Mr. Stidger: "Am I not to be heard?"

The Court: "You have been heard."

Mr. Stidger: "Yes, sir, but not with the knowledge that this is a contempt case against me."

The Court: "Where the contempt is open the court does not have to set it down for trial."

Mr. Stidger: "Do I not have to be notified if the proceeding is for contempt against me? Should not I be notified when I am questioned and examined? Should I not have the privilege of examining other witnesses that have been placed upon the stand?"

The Court: "Your sentence is based upon your admitted testimony."

Mr. Stidger: "I do not know on what part."

The Court: "My decision is final. The case will be dismissed at this time. * * * Is there anything further."

A judgment was then entered, of which the following is a copy:

"STATE OF COLORADO,    } ·ss.
City and County of Denver, }

"IN THE DISTRICT COURT.

"The People of the State of Colorado, Plaintiff,
          vs.
"Wesley M. Beem, Defendant.

"It having appeared to this court that this case and other cases of a similar character, wherein the defendants were arrested and brought before. the court charged with a violation of the statutes of Colorado in relation to gambling, said defendants having been placed under recognizance to appear before this court on the 16th day of January, A. D. 1906; that subsequent to the filing of said cases and prior to the said 16th day of January, 1906, informations were filed by the district attorney of the city and county of Denver against said defendants for the same offense in another division of this court without the knowledge or consent of the judge of this court, and that the said defendants at the time of the filing thereof, or immediately thereafter, appeared in said division and pleaded guilty to the charge as contained in said information, and that a fine of fifty dollars ($50.00) was thereupon imposed by the court upon said plea of guilty, and immediately the judge of said division suspended said fine as against each and all of said defendants, and this court having heretofore ordered an investigation of the proceedings in said division of the district court where said pleas were entered:

"Now, upon this 20th day of January, 1906, upon the oral statement of George Stidger, district attorney in and for the city and county of Denver, made on this date in open court, and upon the personal knowledge and dealings by the judge of this court

with the said George Stidger, as such district attorney, in these cases, and other additional testimony taken herein on this day, the court doth find that George Stidger, as district attorney in and for the city and county of Denver, did, on his own volition, and without the consent or knowledge of this court, attempt to take away and destroy the jurisdiction of this case and other cases similarly pending before this court, and transfer the same to another division of the district court of the said city and county of Denver, and that the said action of the district attorney was willful and intentional; that the said action of the district attorney was taken with the intention of ousting this court of jurisdiction over the above entitled cases and the other cases of a similar nature; that said action tends to obstruct the course of public justice of this court, and to belittle the dignity and authority of the court in the eyes of the public; to hold the court up to ridicule and contempt, and to defeat and destroy the efforts of the court in his attempt to enforce the criminal laws of the state of Colorado, and that such conduct on the part of said George Stidger, district attorney, is contempt of the lawful authority of this court.

"Therefore, it is ordered, adjudged and decreed that said George Stidger, district attorney, be, and he is, hereby held to be in contempt of this court, and that he is fined the sum of five hundred dollars ($500.00), and committed to the county jail within and for the city and county of Denver until such fine is paid.

"Done in open court this 20th day of January, 1906.

"F. T. JOHNSON, Judge."

A copy of this judgment constitutes the warrant of commitment herein.

Mr. Stidger protested again against. the action of the court and insisted that he had attempted to do his duty faithfully as district attorney.

From the above it appears that in proceedings taken under § 1482, 1 Mills' Ann. Stats., certain parties were under bond to appear before division 4 of said court to answer for alleged violations of the criminal law; that while said actions were so pending the district attorney, as he contended was his right and duty, filed informations in these cases in another division of said court and proceeded with the same to sentence; that the judge of said division 4, after an investigation in open court, in which Mr. Stidger contends he had no opportunity to be heard, found him guilty of contempt and entered judgment accordingly.

This is the judgment sought to be reviewed here.

Mr. Stidger had full opportunity to except to this judgment, if an exception was necessary to the preservation of his rights. It does not appear that he had not the opportunity by bill of exceptions to preserve for review any matter not a part of the record proper.

The petitioner assaults the judgment, upon the validity of which depends the legality of the imprisonment herein, upon several grounds. He says that the court was without jurisdiction to render the judgment, that the facts upon which it was rendered did not constitute contempt, that the judgment is erroneous for reasons apparent on its face.

The attorney general says all of these questions could have been reviewed by writ of error and that for this reason this proceeding should not be entertained.

If the purpose was to have this judgment reviewed on the record proper, a transcript would have brought the record here and have enabled us by writ

of error to review the judgment. If the purpose was to have the judgment reviewed on the contention of insufficiency of facts to constitute contempt, a bill of exceptions would have preserved the evidence and have enabled us to review the judgment upon this point. No more time or labor would have been required to lodge the record here on error than has been required to present the questions in this original proceeding. Temporary relief against the imprisonment could have been as expeditiously secured by *supersedeas* as by the issuance of the writ of *habeas corpus*. We cannot see why the petitioner did not have by writ of error an adequate remedy for the review of this judgment. If he had, we regard the law as settled in this jurisdiction that it is our clear duty to dismiss this original proceeding.

Decisions of this court pertinent to this question may be collated in three classes:

1. Those holding that a writ of *habeas corpus* will not lie to review a judgment imposing imprisonment where there is an adequate remedy by writ of error and applying the principle so announced to judgments other than those rendered in contempt proceedings.

2. Those applying this principle to judgments rendered in contempt proceedings and holding that judgments for contempt will not be reviewed by *habeas corpus* proceedings.

3. Those reviewing judgments for contempt. Such cases are numerous and the review has uniformly been by error.

1. *People ex rel. v. District Court,* 22 Colo. 422, was an original proceeding by *certiorari* in this court. The purpose there was to annul a judgment of the district court, which said court, in a *habeas corpus* proceeding, had discharged the petitioner, who was being held in confinement under a judgment by

the county court. It was contended in the district court in the *habeas corpus* proceeding, and in this court upon *certiorari*, that the petitioner was wrongfully detained because of the illegality of the judgment of the county court. It was said that the judgment of the county court was void upon the face of the record. The court assigned several reasons for holding that the district court could not review the judgment of the county court by *habeas corpus*, among them that *habeas corpus* will not be entertained to review a judgment where there is an adequate remedy by writ of error.

"A further answer to the contention of counsel is found in the fact that a writ of *habeas corpus* cannot be used as a writ of error."

*People v. District Court*, 26 Colo. 380, was an original proceeding in this court to secure a writ of prohibition restraining the district court of Arapahoe county and one of its judges from hearing and determining the applications of two parties for writs of *habeas corpus*. These parties, Hanford and Ernest, were convicted in the county court of unlawfully keeping a certain gaming device, and in default of payment of the fine and costs imposed, were committed. Thereupon they made application to the district court of Arapahoe county for writs of *habeas corpus*. Alternative writs were awarded, whereupon application was made to this court for the writ of prohibition mentioned.

In justification of the issuance of the writ of *habeas corpus* by the district court and in resistance of the application for a writ of prohibition restraining that court from entertaining the *habeas corpus* proceedings, it was contended that the act, under which petitioner was convicted, was unconstitutional and also that the act conferring jurisdiction upon the county court in such case was unconstitutional and

void. A peremptory writ of prohibition was directed to the district court and one of the grounds therefor was that the petitioner had an adequate remedy by writ of error to the judgment of the county court. The court, *inter alia,* said:

"In the exercise of our original jurisdiction we may properly, as we have recently done, determine on *habeas corpus* the constitutionality of a statute under which a person was convicted, if no other remedy exists; but we have always declined to exercise such jurisdiction, when adequate relief can be afforded by writ of error."

*People v. District Court,* 33 Colo. 328, was an original proceeding in this court for a writ of prohibition. Wilson was convicted in a justice court of the violation of an ordinance of the city and county of Denver. In default of payment of the fine imposed he was committed. He applied to the district court for a writ of *habeas corpus.* The writ was granted and it was contended before the district judge that the imprisonment of petitioner was illegal because the ordinance under which he was convicted was unconstitutional. The writ of prohibition was made peremptory upon the ground that the petitioner had an adequate remedy as against the judgment complained of by writ of error. The court, with approval, quoted the following from *People v. District Court,* 26 Colo. 380:

"These cases proceed upon the theory that it was within the jurisdiction of the court trying the cause to pass upon the constitutionality of the statute under which the prisoner was being prosecuted, as well as upon other questions involved; and if they held the law to be constitutional, when in fact it was not, it was simply an error, which must be reviewed in the proper way, and could not be availed of collaterally on *habeas corpus.*"

And the court further said:

"The justice's court of the city and county of Denver has original and exclusive jurisdiction of all causes arising under the charter and ordinances, and it was within its jurisdiction to determine whether the ordinance under which it was proceeding was constitutional or void. If it should wrongly hold that the ordinance was constitutional, its judgment would be an error which could be reviewed in the manner provided by statute. The petitioner for the writ had another remedy. He could appeal to the county court, where the constitutionality of the ordinance could be passed upon. From an adverse judgment a writ of error would lie from this court, where the question would be finally determined. This is the procedure provided by statute, and it affords ample relief to persons convicted of a violation of the ordinances."

2. We now pass to the attempts by *habeas corpus* to obtain relief against judgments for contempt.

*In re Popejoy*, 26 Colo. 32, was an original application in this court for a writ of *habeas corpus*. Popejoy was committed by the district court for failure to pay a money judgment against him for separate maintenance. In his proceeding in this court he contended that the judgment under which he was committed was void for several reasons and therefore his committal thereunder illegal. This court, among other grounds for denying the writ of prohibition, assigned as one, that the petitioner had an adequate remedy by writ of error to review the judgment if the same was erroneous.

*Aichele v. Johnson*, 30 Colo. 461, was an original application to this court for a writ of prohibition. The facts were: a writ of injunction had issued out of the district court enjoining Aichele from doing certain acts as county clerk. Aichele was cited to

appear before the district court and show cause why he should not be punished for contempt of court in disobeying the writ. He appeared in that court on the charge of contempt and, among other defenses, raised the question of the court's jurisdiction. This was ruled against him. The court then fixed a day for hearing the charge of contempt. Application was made to this court for a writ of prohibition to restrain the district court from proceeding further. This court denied the writ and the gist of its reason for such action was that Aichele had an adequate remedy by writ of error against any erroneous judgment for contempt that might go against him. *Inter alia,* it said:

"Two principles or rules have been firmly established in this jurisdiction; one that a writ of prohibition, being a discretionary writ, will not go where there is an adequate remedy at law; the other, that a *writ of error is an ample and appropriate remedy for the review of a judgment imposing a penalty for contempt of court.*"

Therein the following from *Cooper v. People,* 13 Colo. 337, 354, is quoted approvingly:

"The remedy by writ of error, however, as we have it, has been found ample to meet all cases, as it furnishes a remedy when either of the other writs might have been resorted to."

In *Aichele v. Johnson* the court further says:

"In *Wyatt v. The People,* 17 Colo. 252, 256, in an opinion by Mr. Justice Helm, the court remarked that where imprisonment is being suffered, *habeas corpus* is the usual procedure for inquiring into the question of jurisdiction. But he also said in that connection, that by a writ of error the same inquiry might be had and that 'the latter method of procedure possesses decided advantages over the former, and jurisdiction in cases pending on error for review

is always a pertinent inquiry'; and concluded with
this observation: 'The practice has been recognized
in a number of other cases and may now be regarded
as firmly established in this state.' In still other and
subsequent cases this court has placed itself in line
with the later decisions of the supreme court of the
United States, and concluded that the better practice
is to put the complaining party to his remedy by
writ of error rather than to award him a writ of
*habeas corpus,* or some other extraordinary remedy,
when the same questions may be investigated by
each.    *    *    *

"Since, therefore, in the review of a judgment
in contempt proceedings the only subject of inquiry
for a reviewing court is the question of the jurisdic-
tion of the court below, and that question may be as
fully and completely investigated on a writ of error
as in a proceeding by prohibition, in the absence of
special circumstances, there is no reason for award-
ing the latter."

As we have stated in the earlier part of this
opinion, we can see no reason why the petitioner
could not have reviewed the judgment complained of
by writ of error.

3.    Many cases are among our reports in which
there has been a review of a judgment for contempt.
Uniformly the procedure has been by writ of error.

The following are cases, other than those hereto-
fore cited, in which the review of the judgment for
contempt has been by writ of error.—*Hughes v. Peo-
ple,* 5 Colo. 436; *People ex rel. District Court,* 6 Colo.
534; *Watson v. People,* 11 Colo. 4; *Cooper v. People,*
13 Colo. 337; *Wyatt v. People,* 17 Colo. 252; *Smith
v. People,* 2 Colo. App. 99; *Shore v. People,* 26 Colo.
516; *Newman v. Bullock,* 23 Colo. 217; *Tibbetts v.
People,* 31 Colo. 461; *Thomas v. People,* 14 Colo. 254;
*Mullin v. People,* 15 Colo. 437.

The petitioner in this case had an adequate remedy by writ of error to review the judgment complained of. He has not availed himself of such remedy, but is here in an original proceeding by writ of *habeas corpus*. This court, by a long line of precedents, has committed itself to the doctrine that an original proceeding by *habeas corpus* will not be entertained when the petitioner has an adequate remedy by writ of error. This same principle applies to all attempts to invoke the original jurisdiction of this court. We refuse to entertain them when there is an adequate remedy otherwise. We must decline to entertain jurisdiction of this proceeding and the same will be dismissed.

Decision *en banc*.          *Dismissed*.

Mr. Justice Goddard and Mr. Justice Bailey dissent.